Anthony T. LEE et al., Plaintiffs,

Mrs. James O'Neal et al., Plaintiffs-
Appellants,

United States of America, Plaintiff-Inter-
venor and Amicus Curiae,

National Education Association, Inc.,
Plaintiff-Intervenor,

v.

MACON COUNTY BOARD OF EDUCA-
TION et al., Defendants,

(Randolph County Board of Education)
et al., Defendants-Appellees.

No. 73-3088

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 6, 1974.

Demetrius C. Newton, Birmingham, Ala., Jack Greenberg, Norman Chachkin, Charles E. Williams, III, New York City, for plaintiffs.

John S. Casey, Heflin, Ala., for defendants.

Ira DeMent, U. S. Atty., Montgomery, Ala., J. Stanley Pottinger, Asst. Atty. Gen., Civ. Rights Div., U. S. D. of Washington, D. C., Solomon S. Seay, Jr., Montgomery, Ala., for other interested parties.

Before BELL, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant, Inez Knight, brought this suit on behalf of her daughters, Lillie Mae, 17, and Rose Ella, 14. The two children were pupils in Randolph County High School, located in a largely rural Alabama county. The high school principal, Hulond Humphries, sent the children home from school February 2,

---

* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

1973. He did not tell them when they would be allowed to return. The same date he wrote two letters to the Randolph County Board of Education listing his various disciplinary contacts with each child and requesting that each be "dismissed" from school. Appellant and her children were not sent copies of the letters or otherwise informed of their existence or content.

February 7 appellant filed a motion for emergency relief in the United States District Court for the Middle District of Alabama. She sought the childrens' reinstatement in school, in essence claiming that they had been excluded without due process. Action on the motion was deferred on agreement pending an administrative hearing before the Board of Education. Lillie Mae and Rose Ella remained out of school in the interim.

At the hearing before the Board on March 8, 1973, Principal Humphries testified to having disciplined the children for several infractions. Both girls had fought with other children in the school halls. On one occasion Rose Ella struck Coach Johnson, the football coach, as he was attempting to break up a fight between her and another student. Both girls used abusive language on several occasions when their teachers reprimanded them. Lillie Mae was absent from school without permission for at least one day. She also counseled her younger sister to flout a teacher's orders. Both children disobeyed teachers' directions and resisted corporal and other forms of punishment.

The appellant and the children were present with their lawyer at the Board hearing. Only two witnesses appeared against them, Principal Humphries and School Superintendent Simpson. The latter had no personal knowledge of the children's misbehavior. The former had personal knowledge of their resistence to punishment and their abusive language, but had not observed the fights and other transgressions that had initial-

ly caused teachers to recommend punishment.[1] The children and their mother were permitted to testify before the Board. Lillie Mae and Rose Ella denied being at fault in the fights and claimed that they had made good faith efforts to complete home work assigned by the principal as punishment but which he had found unacceptable. Mrs. Knight testified that the girls had been the targets of taunts from their fellow students because their uncles, her brothers, had been indicted for murder.

The Board of Education acquiesced in Humphries' request by permanently expelling both children. On July 20, 1973, the District Court denied the motion for emergency relief, holding that there had been no deprivation of due process and that the evidence before the Board of Education was sufficient to support the determination that the children were guilty of the infractions charged. The District Court also held that, although harsh, the penalty assessed—permanent exclusion from school—was not arbitrary in view of the school's interest in avoiding disruption and in view of the principal's assiduous but frustrated efforts to work out the problem by conference with the children and their mother. It appears from the record and briefs that Lillie Mae and Rose Ella have received no schooling at all from February, 1973 to the date of this appeal.

In our view the Board employed an erroneous legal standard in considering the children's cases. During the disciplinary hearing the Superintendent, who is also Secretary of the Board, was interrogated about Board response to a request from the principal for expulsion of a student. He described the Board's policy in this way:

A: . . . *Our policy is that the principal exhausts every effort; and once he recommends it, we usually grant it.*

Q: And do you know of any exceptions to that rule?

A: I don't; white or black.

---

1. We reject the argument of appellant that hearsay testimony was constitutionally prohibited.

Thus it appears that rather than bringing to bear its independent judgment on the question of what penalty to assess, the Board made a practice of confirming the principal's judgment. When a serious penalty is at stake a school board must provide a higher degree of due process than when the student is threatened only with a minor sanction. See, e. g., Williams v. Dade County School Board, 441 F.2d 299 (CA5 1971). Here permanent exclusion from the county educational system was the potential penalty. Formalistic acceptance or ratification of the principal's request or recommendation as to the scope of punishment, without independent Board consideration of what, under all the circumstances, the penalty should be, is less than full due process.[2] Appropriate punishment is for the Board to determine, in the exercise of its independent judgment. The case must, therefore, be remanded to the Board with directions that it reconsider the question of appropriate penalty, under correct legal standards. Hopefully, now that the children have undergone the sobering consequence of a year out of school, the controversy can be brought to an end without further litigation, and discussion by us may be helpful to that end. This court has expressed and reiterated its view that school disciplinary matters are best resolved in the local community and within the institutional framework of the school system. Stevenson v. Board of Education of Wheeler County, 426 F.

2d 1154 (CA5), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970); Lucas v. Chapman, 430 F.2d 945 (CA5, 1970); Ferguson v. Thomas, 430 F.2d 852 (CA5, 1970); Wood v. Alamo Heights Indep. School Dist., 433 F. 2d 355 (CA5, 1970). With the cooperation of the mother (if forthcoming) this case may now be ripe for institutional disposition, without the necessity of the parties repairing again to the federal courthouse for a judicial decision of whether there is such disparity between the offenses and the penalty that the commands of the fourteenth amendment have not been met.[3]

We do not minimize the children's misbehavior. They were undisciplined, defiant, and abusive, and their mother was uncooperative with school officials in attempting to deal with them. Nor are we insensitive to the difficulties faced by school officials in attempting to curb disorderly interferences with the primary task of the school, which is education. But a sentence of banishment from the local educational system is, insofar as the institution has power to act, the extreme penalty, the ultimate punishment. In our increasingly technological society getting at least a high school education is almost necessary for survival. Stripping a child of access to educational opportunity is a life sentence to second-rate citizenship, unless the child has the financial ability to migrate to another school system or enter private school.

2. It appears from the record that the Board did not consider the possibility that the system's interests might be vindicated by a sanction less than exclusion forever from the school system, such as suspension or transfer to another school. The record discloses that one of the children in a disciplinary conference with the principal, expressed a desire to transfer.

3. Such a case can, of course, arise. Clearly, for example, a school board could not constitutionally expel forever a pupil who had committed no offense other than being five minutes tardy one time.

In the landmark case of Dixon v. Alabama State Board of Education, 294 F.2d 150,

157 (CA5, 1961), this court wrote the following:

"Turning then to the nature of the governmental power to expel the plaintiffs, it must be conceded . . . that that power is not unlimited and cannot be arbitrarily exercised. Admittedly, there must be some reasonable and constitutional grounds for expulsion or the courts would have a duty to require reinstatement."

This passage and the constitutional provision it elaborates do not license federal judges to review and revise school board disciplinary actions at will. Application is limited to the rare case where there is shocking disparity between offense and penalty.

Private citizens, law making bodies, and the media all bend their efforts toward encouraging children to complete their high school educations and to avoid becoming dropouts and burdens to society. In the twenty years since Brown v. Board of Education, 347 U.S. 483, 74 S. Ct. 686, 98 L.Ed. 873 (1954), this country has committed itself to a policy against state-imposed public school segregation. It is not lesser but more stringent state action to bar a child forever from public school, with the result that he secures no education at all.

The judgment of the District Court is vacated and the cause is remanded with directions to remand the case to the defendant Board for reconsideration under correct legal standards.