Gene FISHER, guardian and next friend for Kate Fisher, Plaintiff,

v.

BURKBURNETT INDEPENDENT SCHOOL DISTRICT et al., Defendants.

Civ. A. No. CA–7–76–40.

United States District Court, N. D. Texas, Wichita Falls Division.

Sept. 16, 1976.

Milton E. Douglass, Jr., Wichita Falls, Tex., for plaintiff.

Roger Lee, Wichita Falls, Tex., for defendants.

## MEMORANDUM OPINION

ROBERT M. HILL, District Judge.

The facts of this case are not in dispute. The plaintiff, Kate Fisher, a minor 15 years old, was a student at Burkburnett High School when, on May 11, 1976, she seriously overdosed on the drug Elavil. The incident happened at school and nearly resulted in her death. The plaintiff was then suspend-

ed ten days for violating a school drug policy. A hearing before the School Board of Trustees on the last day of the suspension resulted in her expulsion for the balance of the school term and loss of all grades and credits for the school term.[1] Plaintiff obtained a temporary restraining order from a state court and passed her final exams. The only question is whether she will be allowed credit for the completed term.

▮ Plaintiff presents essentially three grounds for relief in her complaint. First, she argues that the School Board's drug regulation exceeded a state statutory grant of power. Second, she argues that the alleged mandatory nature of the punishment under this regulation deprived her of procedural due process. Finally, she asserts that the punishment was arbitrary and capricious or, in other words, a violation of substantive due process. Plaintiff also urged at one time that the term "dangerous drug" in the school regulation was unconstitutionally vague and that the School Board's verdict was not supported by substantial evidence. She seems to have since abandoned these latter two points. In any event, the court finds them to be without merit.

## I.

▮ The plaintiff's first argument is that the School Board exceeded its statutory authority[2] in suspending her because Tex. Educ.Code Ann. § 21.301 (1972) authorizes only the suspension of "incorrigible" students.[3] The court accepts the plaintiff's definition of "incorrigible" as denoting more than a single instance of misbehavior. It disagrees, however, with her statutory construction. Tex.Educ.Code Ann. § 23.-26(d) (1972)[4] provides an independent grant of authority for school boards to promulgate disciplinary rules and, by necessary implication, to punish students for infractions of these regulations.

▮ The Fifth Circuit read § 23.26 and § 21.301 as alternative grants of disciplinary power in *Pervis v. La Marque I. S. D.,* 466 F.2d 1054, 1057 (1972):

"... Without reaching the issue whether Pervis and McGrue were punished for violating section 21.301 or the school regulation in question [promulgated under § 23.26], we hold that a three-judge court is not required. ..."

Likewise, in *Texarkana I. S. D. v. Lewis,* 470 S.W.2d 727 (Tex.Civ.App., Texarkana 1971), a Texas Court of Civil Appeals cited a Texas Attorney General's Opinion consistent with this court's construction of the two statutes as alternative grants of the power to suspend a student.[5] The court considers this construction of § 23.26(d) as more logical than the plaintiff's one-free-bite (or

---

1. The lost time ran from February 25, 1976, to May 26, 1976, one trimester under the quarter system.

2. Under Texas law, a school board has only powers expressly conferred on it by law and *those necessarily implied from the express powers. Harlingen I. S. D. v. C. H. Page & Bro.,* 48 S.W.2d 983 (Tex.Com.App.1932).

3. § 21.301 Suspension of Incorrigible Pupil.
 The board of trustees of any school district may suspend from the privileges of the schools any pupil found guilty of incorrigible conduct, but such suspension shall not extend beyond the current term of the school. Tex.Educ.Code Ann. § 21.301 (1972).

4. § 23.26 In General
 \* \* \* \* \* \*
 (d) The trustees may adopt such rules, regulations, and by-laws as they may deem proper.
 Tex.Educ.Code Ann. § 23.26 (1972).

5. "While the Board of Trustees has ample authority to suspend or expel students, 'it is without authority to suspend a student for any act or conduct, unless, prior thereto, the Board has promulgated a rule, regulation or policy generally covering such act or conduct for which the student is subject to being suspended, or unless the act or conduct constituted incorrigible conduct in violation of this article. (Art. 2904, *Vernon's Ann. Revised Civil Statutes,* now Sec. 21.301, Tex.Education Code). Such rule, regulation or policy may be informal, preferably written but may be verbal, as long as it fairly apprises the student of the type of prohibited conduct for which he may be suspended from school.' Opinion of the Attorney General 1969, No. M–395." 470 S.W.2d at 733.

two, or three) reading of the Texas Education Code. If the bite is sufficiently vicious, a school may under Sec. 23.26(d) suspend even a student who has not previously drawn blood.

 This is not to imply that the court considers the plaintiff's behavior as particularly heinous. The court merely holds that the statutes should be reasonably construed to allow school boards to proscribe one-shot offenses punishable by suspension.

Plaintiff also contends that the school board promulgated a mandatory punishment while the statutory authority for suspension makes it a permissive punishment. It is unnecessary to discuss this alleged overstepping of authority in view of the court's construction of Sec. 23.26 as an alternative grant of power, *supra,* and also in view of the court's finding, discussed below, that the punishment was not in fact mandatory.

### II.

Plaintiff contends that she was denied procedural due process because the Burkburnett School Board acted under a policy of mandatory suspension. The relevant portion of her brief states:

> . . . [I]n the case at bar the School Board, in following its mandatory policy, merely performed a "formalistic acceptance or ratification" of its prior rule. The Board abdicated its responsibility to exercise proper discretion. Accordingly, Plaintiff received no hearing whatsoever.

Plaintiff's Memorandum at 8.

This description incorrectly characterizes both the facts and the applicable constitutional law.

The transcript of plaintiff's hearing before the School Board shows that the appropriateness of the punishment of expulsion was developed in the record at some length. Both Gene Douglass, plaintiff's attorney, and Roger Lee, attorney for the School Board, questioned the plaintiff's parents about her academic history, her family life, and her plans for future counseling and treatment. Mr. Douglass elicited from plaintiff's father his opinion as an educator about the appropriateness of expulsion for this offense. Tr. at 130–131. Mr. Douglass also argued that expulsion would serve no rehabilitative function. Tr. at 137–138. Both attorneys made it very clear to the School Board that they should not construe the regulation [6] as being mandatory. Tr. at 26–27, 133–134.

 The court finds that, while the school regulation in question was literally mandatory in its use of the word "shall," the School Board had the inherent authority to ignore this mandatory language and impose lesser penalties than expulsion. The punishment in the present case was in fact imposed in a discretionary manner. Although the plaintiff places great emphasis on the Board's language that it would "uphold" the School Board Policy, this does not indicate that the Board merely rubber-stamped a prior decision made before the hearing. In the context of this hearing, the court concludes that the Board considered the punishment prescribed in its regulation to be presumptively correct. If the Board did not find sufficient mitigating circumstances to deviate from the policy, this hardly makes the hearing a sham or rubber-stamp.

 Nothing in the Due Process Clause prohibits the establishment of presumptively correct punishments for breaches of school discipline. Quite to the contrary, most recent jurisprudence has urged less rather than more discretion in the imposition of punishment.[7] The Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct.

---

6. The regulation states:

Any student known to have a dangerous or narcotic drug in his possession, or known to be under the influence thereof, while in school, or participating in or attending a school-sponsored function, *shall* be expelled for the balance of the semester and no credits or grades given to the student for the semester. (emphasis added).

7. E. g., John Coffee, Jr., The Future of Sentencing Reform, 73 Mich.L.Rev. 1362 (1975). Proposals to more tightly structure the sentencing discretion of judges and corrections administrators have generally accompanied the death

2726, 33 L.Ed.2d 346 (1972), overturned the death penalty principally because of its almost standardless administration.[8] Legislators and legal pundits have concluded that presumptively correct sentences in the criminal justice system would make punishment much fairer.[9] This court cannot conclude that a presumption that drug abuse at school should be punished by a trimester's suspension violates procedural due process.

Plaintiff has cited several cases to the effect that mandatory punishment of pupils may violate due process. A closer examination of these cases shows consistency with the court's result in the instant case. In *Betts v. Board of Education of City of Chicago,* 466 F.2d 629 (7th Cir. 1972), the Seventh Circuit held that the school must allow a student to present arguments in mitigation of punishment "since that penalty was discretionary rather than prescribed." *Id.* at 633. In other words, the student must be heard about the issue of punishment when punishment is an issue. This case is not authority that school boards may not set mandatory or presumptively correct punishments. Likewise, *Lee v. Macon County Board of Education,* 490 F.2d 458 (5th Cir. 1974) overturned an expulsion recommended by the school principal as punishment for a course of misconduct, in the absence of any specific regulations.[10] The school board ratified this decision made before the hearing and in the absence of any guiding standards. Due process required that the board hear the student on punishment since the appropriateness of expulsion was issue. Instead the board delegated the decision about punishment to a principal who acted without hearing the student. This opinion in no way indicates that a school board may not formulate a policy about the correct punishment for specific conduct.

■ Therefore, the court concludes that the Burkburnett School District's regulation, determining in advance that drug abuse presumptively merited a trimester's suspension, was completely consonant with procedural due process. The plaintiff was fully heard by the board on why this policy should not apply to her.

### III.

■ The plaintiff finally urges that her punishment was so grossly excessive that it violates substantive due process. The court does not doubt that the power of the school board to punish is not without limit and that such a case could exist. *See Dixon v. Alabama State Board of Education,* 294 F.2d 150, 157 (5th Cir. 1961); *Lee, supra,* at

---

throes of the rehabilitative philosophy in the field of criminal corrections.

8. The plaintiff's analogy of her case to *Woodson v. North Carolina,* —— U.S. ——, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), in which the Supreme Court overturned the North Carolina death penalty because of its mandatory nature, is unsatisfactory. Because of the unique and irreversible nature of capital punishment, extension of constitutional principles drawn from capital cases is a hazardous enterprise. Capital punishment is qualitatively different from all other punishments imposed by the state, and it is this salient fact that motivates courts and legislatures to scrutinize and then scrutinize again every step in a capital case. The concept of discretion in imposing a penalty embodies a fact-finding and disposition process too detailed and differentiated for statutory treatment. Common sense and common law traditions dictate that the extent of fact-finding required by due process in the punishment phase of a capital case is considerably different from that required before levying a parking ticket fine or even before suspension from school.

In the present case, the School Board was not required by due process to engage in the detailed fact-finding about punishment that is required in more serious criminal cases, e. g., preparation of reports on the offender, specific findings of aggravating and mitigating circumstances (as in a capital case), etc. It is unnecessary to decide whether due process required the School Board to engage in *any* detailed fact-finding about the propriety of expulsion as a punishment. The School Board in fact heard plaintiff's evidence and argument on the issue of punishment, and this action was constitutionally sufficient.

9. E. g., Sen. Edward M. Kennedy, Making Time Fit the Crime, 12 Trial, March, 1976, at 14.

10. No regulation is mentioned in the opinion and it is therefore assumed that the board lacked a policy on the specific conduct and punishment involved, other than to ratify what the principal did.

460 n. 3. Having said this, however, the court cannot find the loss of a trimester constitutionally unreasonable under the facts in this case. The loss of credit was undoubtedly a bitter pill for plaintiff to swallow; the court does not find it a particularly therapeutic dose of justice. Such an academic forfeiture will not demonstrably make the plaintiff a better person. But the plaintiff's interests in rehabilitation and personal development are not the sole considerations before the School Board.

School administrators have a pressing interest in discouraging drug abuse at school. They may propagandize against such behavior, but the efficacy of strict punishment is surer. This concern with general deterrence explains the harshness of the Burkburnett I.S.D. policy on drugs. Stripping the plaintiff of academic credit does not serve any academic purpose, but it does effect school discipline. The school's policy of suspension for a trimester thus furthers a legitimate interest in a rational if severe manner.

The school's interest in general deterrence cannot justify any punishment in any circumstance. The disparity between misconduct and punishment would be considerably greater had the plaintiff been caught with a joint of marijuana or a bottle of wine in her purse. A great enough disparity between the offense and punishment in an individual case might render the punishment an unreasonable means to attain the legitimate end of general deterrence of drug abuse by others. In the present case, however, the harshness of the punishment is tempered by the non-trivial nature of the incident. The plaintiff flirted with death. The punishment meted out to her is severe, but the court does not find it unconstitutionally excessive.

For the foregoing reasons, all relief sought by plaintiff is denied. A judgment has accordingly been entered by this court.