**Dennis Harry MITCHELL et al.,
Plaintiffs-Appellants,**

v.

**BOARD OF TRUSTEES OF OXFORD MUNICIPAL SEPARATE SCHOOL DISTRICT et al., Defendants-Appellees.**

**No. 80–3167.**

United States Court of Appeals,
Fifth Circuit.

Sept. 11, 1980.

Alvin O. Chambliss, Willie L. Rose, Oxford, Miss., for plaintiffs-appellants.

Will A. Hickman, S. T. Rayburn, Oxford, Miss., for defendants-appellees.

Before KRAVITCH, HENDERSON and REAVLEY, Circuit Judges.

KRAVITCH, Circuit Judge.

Dennis Mitchell and Leon Coleman, together with their mothers as next friends, brought this action for injunctive and declaratory relief and for damages against the Oxford Municipal Separate School District (hereafter the School Board) and its members. The plaintiffs alleged that their substantive due process rights were violated by application of a School Board policy which mandates the automatic expulsion[1] of "[a]ny student who brings a knife or any other object which would be classified as a weapon to school . . . ." Final judgment was entered for the defendants. We affirm.

A detailed explanation of the facts is not necessary. Both plaintiffs admitted violating the rule against bringing knives or other weapons to school. Mitchell is 16 years old and actually threatened another student with a knife.[2] Coleman is 12 years old and asserted that he found the knife he brought to school on the school bus. While at school he showed the knife to at least two of his classmates; one of the classmates testified Coleman threatened to cut him if he reported the incident.

---

1. Expulsion as used in this case means exclusion from school for the balance of the semester.

2. Mitchell and the student he threatened apparently were involved in a running dispute. As they departed from the school bus on the day in question, they were directing abusive language at each other. The other student struck Mitchell with a flag stick and Mitchell responded by brandishing a knife. The dispute was quelled immediately by other students and the bus driver. Mitchell testified he did not intend to cut the other student and only had the knife because he understood his nemesis was going to bring a knife. The other student was not in possession of a knife and was suspended from school for three days for his part in the disturbance.

Both students were expelled for the remainder of the semester,[3] after hearings before the School Board at which only two factual issues were addressed: whether the student was in possession of a knife at school and whether he knew there was a School Board policy which prohibited students from bringing knives to school.[4]

The legal issue in the case as advanced by the plaintiffs is whether, as a matter of substantive due process, a student is guaranteed some discretion by the School Board in fixing the punishment for violation of a rule. The plaintiffs argue they have such a right; we disagree.

3. Both incidences were early in the second semester, so both children were excluded from school approximately four and a half months.

The expulsion ruling from the School Board as to plaintiff Mitchell provided that he would be allowed to attend summer school to make up his missed semester and "if he conducts himself in keeping with school policies, upon graduation, this expulsion will be expunged from his record." We were informed at oral argument that Mitchell did enroll in summer school.

The school system does not provide summer school for credit for elementary students, so plaintiff Coleman was given no such option. Nor did plaintiff Coleman's expulsion provide that it would be expunged from his school record if he properly deports himself for the remainder of his years in school.

4. The plaintiffs have raised limited procedural due process challenges, but concede generally that procedural due process requirements were complied with. That is, the students and their parents were given notice of the hearings before the School Board and of their right to counsel at those hearings.

The hearing before the School Board is challenged, however, as not comporting with procedural due process (1) because the School Board's attorney had the dual role of prosecuting the case and advising the Board that they must impose expulsion and (2) because the superintendent and School Board attorney sat with the Board during its deliberation in executive session though both were involved in the prosecution of the case. These points were not raised in the district court and cannot be asserted for the first time on appeal.

Appellant Mitchell individually raises another procedural due process claim which was arguably not considered by the district court. The chronology of events is important to understand his argument. The fracas out of which his expulsion arose occurred on Friday, January 11, 1980. On January 14, after a confer-

The policy as issued by the School Board states:

It is the policy of the Oxford Municipal Separate School District Board of Trustees that no knives are to be brought to school by any student. Any student who brings a knife or any other object which would be classified as a weapon to school or on the school grounds with him shall be immediately expelled from school for the remainder of the semester with no grades and credits being given.

Although by its terms the policy is mandatory,[5] based on the reasoning in *Fisher v. Burkburnett Independent School District,*

ence with the Assistant Principal and his mother, Mitchell was suspended pending the hearing before the School Board. That hearing was held on January 22, seven school days later, and resulted in his expulsion.

Before the district court Mitchell argued the eleven-day span between the suspension and the hearing violated the rule in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The School Board countered arguing the conference on the 14th satisfied *Goss,* given the full-fledged hearing on the 22nd before he was actually expelled.

As we understand Mitchell's argument before this court, he has abandoned his argument that the eleven-day lapse violated *Goss.* Now, he argues that under *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) and *Goss* a student cannot be excluded from school pending a hearing before the School Board unless his presence poses a continuing danger to persons or property or an ongoing threat to the academic process. We disagree. *Goss* permits informal notice and hearings to precede suspensions of ten days or less. The Assistant Principal suspended Mitchell for seven school days pending a resolution of the issue by the School Board. The conference with the Assistant Principal before Mitchell was suspended comported with the *Goss* requirements.

5. The policy is mandatory only in the sense that once the Board finds a violation, the punishment is mandated. As we understand the Board's position, however, it could rule that there is no violation if the student inadvertently or unknowingly brings a weapon to school. In the Mitchell case there was no question about whether he intentionally brought the weapon to school. If in the Coleman case, the child had brought the knife to school but had immediately turned it in to a teacher or the principal, he would not have violated the rule.

419 F.Supp. 1200 (N.D.Tex.1976), the district court held that the School Board has inherent authority to ignore the mandatory language and impose a lesser punishment. The court went on to hold that the punishment imposed here was not so excessive that it lacks a rational relationship to a legitimate educational purpose.

The plaintiffs argue that the district court was wrong in concluding that the rule is not mandatory and, when properly viewed as mandatory, the rule is unconstitutional. We are not completely comfortable with the conclusion that the School Board has inherent authority to ignore its own rule. The rule as written is mandatory and we will consider it as such.

As revealed in reported court cases, school rules for disciplining students fall into one of two categories. On one side are rules which provide that the punishment must fit the misbehavior and be tailored to the pupil's age, intelligence and personal history. In the other category are rules which decree consistency in the punishment of certain misbehavior in all pupils. If the broken rule is in the first category, then the disciplinarian will consider such factors as whether the child has engaged in the same misbehavior before, how well the child understood that his behavior would be unacceptable, and what circumstances surrounded the misconduct. For example, schools which use corporal punishment tend to tailor it to the child rather than setting down fixed rules such as: "Misbehavior A will be punished by a spanking." See, e. g., Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (corporal punishment policy provided: "Corporal punishment may be used in the case where other means of

seeking cooperation from the student have failed. . . . The principal will determine the necessity for corporal punishment. . . . In any case, the student should understand clearly the seriousness of the offense and the reason for the punishment.") [6]

In the other category are mandatory rules which represent the administration's response to certain articulable and well-defined problems. These rules tell the students that if misbehavior A occurs, punishment B will follow. See, e. g., Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (the use or possession of intoxicating beverages at school shall be punished by suspension for the balance of the semester); Caldwell v. Cannady, 340 F.Supp. 835 (N.D.Tex.1972) (school altered a rule which gave the school board discretion to expel a student who uses, sells or possesses a dangerous drug to a rule which required expulsion in such cases); Fielder v. Board of Education, 346 F.Supp. 722 (D.Neb.1972) (in an effort to reduce tardiness and absenteeism, the school set up a very specific schedule of punishment).[7]

The School Board in Oxford has adopted a rule in the latter category to insure the safety of students. Undeniably, the School Board has the right, power, and duty to make and enforce a rule against bringing weapons to school. To satisfy that responsibility, the Board responded with a rule which is consistent and simple to apply.

We have discovered no circuit court cases and few district court cases in which the validity of a rule which mandated a certain punishment for violation of a certain rule was directly at issue.

---

**6.** For other cases involving disciplinary rules falling in this category, see Sims v. Waln, 536 F.2d 686 (6th Cir. 1976), cert. denied, 431 U.S. 903, 97 S.Ct. 1693, 52 L.Ed.2d 386 (1977); Lee v. Macon County Board of Education, 490 F.2d 458 (5th Cir. 1974).

**7.** The rule provided:
    1. Each unexcused tardiness will mean one-half hour of detention after school the same day.
    \*   \*   \*   \*   \*   \*
    4. Unexcused absence will mean a *detention of two hours* on the day of attendance in school.
    \*   \*   \*   \*   \*   \*
    6. Skipping of school will mean detention for twice the time skipped or two hours, whichever is more.
    7. Unexcused and intentional skipping of detention any day will mean doubling of the time of detention next day.
346 F.Supp. at 725 n.2 (emphasis in original).

In *Caldwell v. Cannady*, 340 F.Supp. 835 (N.D.Tex.1972), the plaintiffs levied a substantive due process challenge against a school board policy which required the expulsion from school of any student who sells, uses or possesses any dangerous drug or narcotic. The mandatory expulsion rule had superseded a prior discretionary expulsion rule. The district court upheld the mandatory rule as a "reasonable exercise of the power vested in [the] local school board." 340 F.Supp. at 838.

In *Fisher v. Burkburnett Independent School District*, 419 F.Supp. 1200 (N.D.Tex. 1976), the plaintiff had been expelled from school because of drug abuse. The district court held that despite the mandatory language of the policy violated, the school board had had a hearing on the correctness of the punishment and thus there was no procedural due process violation. The district court also rejected a claim that the punishment was so disproportionately harsh compared to the misbehavior that it constituted a violation of substantive due process.

These district courts protected from constitutional challenges rules which resulted in virtually no discretion in the disciplinarian. Once a violation was found, a punishment mandated by the rule followed. Appellants argue, however, that *Lee v. Macon County Board of Education*, 490 F.2d 458 (5th Cir. 1974), requires a different result here.

In *Lee*, the plaintiffs were permanently expelled from school for a series of misbehavior. A board member testified in district court that the Board's policy is to grant expulsion upon recommendation of the principal. The district court held that the permanent expulsion from school was not an arbitrary punishment and that there was sufficient evidence before the Board of Education to support the determination

that the children were guilty of the infractions charged.

The Fifth Circuit reversed stating:

Formalistic acceptance or ratification of the principal's request or recommendation as to the scope of punishment, without independent Board consideration of what, under all the circumstances, the penalty should be, is less than full due process. Appropriate punishment is for the Board to determine, in the exercise of its independent judgment.

490 F.2d at 460 (footnote omitted).

■ Appellants argue that *Lee* constitutionally requires the Board to exercise discretion before expelling a child. We do not read *Lee* so broadly. Rather, the discretion *Lee* mandates was exercised; it was exercised when the Board adopted the rule setting expulsion as the punishment for bringing a knife to school. That the Board exercised its discretion to opt for consistency of punishment rather than a tailoring of punishment to the child, simply does not implicate the due process clause of the Constitution.[8]

This court has consistently stated that school disciplinary matters are best resolved in the local community and within the school system. *Lee v. Macon County Board of Education*, 490 F.2d 458, 460 (5th Cir. 1974), *citing Stevenson v. Board of Education of Wheeler County*, 426 F.2d 1154 (5th Cir.), *cert. denied*, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970); *Wood v. Alamo Heights Indep. School District*, 433 F.2d 355 (5th Cir. 1970). If the plaintiffs believe the rule mandating expulsion for the bringing of weapons to school is too harsh, their remedy is to persuade the School Board to change it.

■ The School Board is under an obligation to educate the children of Oxford County. The Board is also under an obliga-

---

**8.** This is not a case where the Board opted for a mandatory rule which imposed a grossly disproportionate punishment for a given offense. *See, e. g., Lee v. Macon County Board of Education*, 490 F.2d at 460 n.3. As the court in *Lee* stated, such cases can arise. When they do, however, they are unconstitutional because there is not a rational relationship between the punishment and the offense, *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir.), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961), not because the punishment is mandatory.

tion to provide a safe environment for the children so they can learn. Unfortunately, violence in the schools is increasingly becoming a way of life. This School Board has responded to that problem by making a strict rule, and punishing violations with one of the most severe weapons in its arsenal of punishments. Because the rule and the punishment for violating the rule clearly are rationally related to the goal of providing a safe environment in which children can learn, it comports with substantive due process.

AFFIRMED.