438 So.2d 87 (1983)
C.J., Student, and Mr. and Mrs. Howard Jones, Parents, Appellants,
v.
The SCHOOL BOARD OF BROWARD COUNTY, Florida, Appellee.
No. 82-1556.
District Court of Appeal of Florida, Fourth District.
September 7, 1983.
Rehearing Denied October 12, 1983.
Steven M. Weinger of Kurzban, Kurzban & Weinger, P.A., Miami, for appellants.
Edward J. Marko of Marko, Stephany & Lyons, Fort Lauderdale, for appellee.
GLICKSTEIN, Judge.
At issue is whether an order of expulsion by the School Board of Broward County of a thirteen-year-old girl from public school for the 1982 summer session and both semesters of the following school year can be affirmed under the facts of this case. We conclude that such order is not supported by substantial, competent evidence; therefore, we reverse and remand.
Although a number of issues have been raised by the parties, we have not dealt with all of them because of our opinion that one controls the disposition of the case. For the purpose of argument, we accept the proposition that the mandatory policy that existed here is enforceable; namely, automatic expulsion for possession of a weapon. We do so, again for the sake of argument, for the reasons contained in Mitchell v. Board of Trustees of Oxford Municipal Separate School District, 625 F.2d 660 (5th Cir.1980). However, we are very sensitive to the principle that entitlement to an education has been recognized as a property interest protected by the due process clause of the fourteenth amendment, in Goss v. Lopez, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). Further, we share the concern of Judge Godbold in Lee v. Macon County Board of Education, 490 F.2d 458, 460 (5th Cir.1974) wherein he said:
But a sentence of banishment from the local educational system is, insofar as the institution has power to act, the extreme penalty, the ultimate punishment. In our increasingly technological society getting at least a high school education is almost necessary for survival. Stripping a child of access to educational opportunity is a *88 life sentence to second-rate citizenship, unless the child has the financial ability to migrate to another school system or enter private school.
Because of our sensitivity and concern, we intend that school boards turn square corners, dot all of their "i's" and cross all of their "t's," if they intend to enforce such a rigid, mandatory rule. In this case, the school board did not pass muster.
The uncontradicted facts establish that Cynthia Jones, a thirteen-year-old girl, had received a commemorative knife from her father to give to her boyfriend as a Christmas gift. This was a bone-handled knife with a plate thereon for initials or other inscription. It had no switch mechanism and had to be opened as whittlers have done for generations. The child had a girlfriend who was moving away from the city, lived too far to come to Cynthia's home, but wanted to see the knife. To accommodate her girlfriend, Cynthia brought the knife to the school bus stop to show it to her, with the intention of taking the knife home before the school bus arrived. However, the bus approached; and Cynthia, reluctant to face the consequences at home for missing the bus, elected to take the knife with her to school. The knife was in a pouch, packed in the gift box with paper, and she could not open it if she wanted to for a practical reason  she was a nail biter.
Life being a matter of timing  good or bad  for most of us, Cynthia was in the bathroom at school when an older student, not with her, commenced smoking a cigarette in the bathroom. An administrative assistant discovered the smoking and in due course the purses of all of the girls in the bathroom were searched. The knife was found and Cynthia's school life metamorphosed into a chapter of Les Miserables.
The bases for Cynthia's expulsion were two school board policies  5006 and 2304. Rule 26(1) of the former provides for mandatory expulsion in the event of the following:
The possession, use or transmittal of a weapon or use of any article as a weapon or use in a manner reasonably calculated to threaten any person. Weapons are defined in Board Policy 2304.
The latter in pertinent part defines weapons as follows:
2. Knives  switchblade, hunting or any knife used to intimidate.
In our view, the commemorative, boxed knife in this case did not fit any of the three descriptive requirements in the Board's policy. It was not a switchblade, nor a hunting knife, nor any knife used to intimidate.
We have no misgiving about requiring the School Board to toe the mark in their choice of language in light of the irreplaceability of education and of the Board's position at oral argument that if a student with a knife asked a second student to take the knife to the principal's office and en route the second student was stopped by an official, the second student would be expelled. We are as mindful as every member of the School Board of the absolute necessity of preventing violence in school. Every day we must deal with evidence of man's inhumanity to his fellows; and we are as cognizant as all public officials of the necessity for strict disciplinary requirements in the schools. But the School Board cannot have it both ways. If it is going to urge the validity of a mandatory rule of such gravity, then it had better use in its rule making all of the punctiliousness that Seurat did in his painting. Here, it failed to do so by not meeting its definition of knives as weapons.
ANSTEAD, C.J., and HURLEY, J., concur.