GLICKSTEIN, Judge,
concurring specialty-
The telephone company seems to have expended a lot of time in the investigation of this matter. Those of us who cherish our privacy should be grateful that the company has a rule for its employees that applied to this claimant, which the referee described:
On May 25, 1985, the claimant signed an acknowledgment which indicated that the claimant agreed that: “... during or after my employment, except as required in the conduct of company business or when properly authorized in writing, I will not publish, disclose, use or authorize anyone else to publish, disclose, or use, any private, confidential, or proprietary information that I may have acquired, learned, developed, or created by reason of my employment.”
Unfortunately, with all of that investment in time, the company never called the complainant to testify as a witness, with the result that we have only testimony of the company investigator that the complainant told him the complainant never gave the claimant/employee his private telephone number. The claimant testified that the complainant did give the private number to her before she called him, after she had previously obtained the complainant’s private number from the records of the telephone company. The referee, not surprisingly, found — as she testified — that the complainant gave her number but surprisingly went onto deny her benefits when the above rule does not prevent snooping. It prevents use of what information is obtained by snooping.
Appellee’s brief recites:
The misconduct was the unauthorized obtaining of the non-published number for personal use and the “hang ups” by Appellant after she so obtained the number. [Emphasis added.]
The referee’s findings include the following:
As a result of the investigation conducted and the information accumulated, the claimant was discharged for making harassing telephone calls to a subscriber, and for obtaining from company records a non-published number for personal use in violation of company policy and the acknowledgment dated May 25, 1985, signed by the claimant. The claimant was discharged on November 25, 1985. [Emphasis added.]
Neither the referee nor appellee refers us to any rule that uses the word “obtaining” or any word similar thereto. I liken this case to C.J. v. School Board of Broward County, 438 So.2d 87 (Fla. 4th DCA 1983), in two respects. First, in both instances administrative rulings incorrectly found a rule violation by misinterpreting or misapplying the pertinent rule. Secondly there is a parallel respecting the potential impact on the affected person. In C.J. we wrote, respecting the potential effect of a year’s expulsion from secondary school:
In our increasingly technological society getting at least a high school education is almost necessary for survival. Stripping a child of access to educational opportunity is a life sentence to second-rate citizenship. ...
Id. at 87-88. Here, we are addressing an adult’s livelihood, or, more accurately, unemployment benefits she may sorely need, after dismissal.
*1378 I disagree with the majority’s reasoning as to the alleged “harassment,” the second basis for the denial of claimant’s benefits; namely, the telephone calls made to the acquaintance and the claimant’s hanging up if the acquaintance’s roommate answered. The majority appears to conclude there was no harassment of the acquaintance, but only of his roommate.
Again, in my view, the telephone company is bound, as are we, by the referee’s finding — questionable or otherwise — that the acquaintance gave her his private number. . Having given the number, he could hardly complain about an invasion of his privacy by calls from the person to whom he gave the number. Surely, the referee had to understand that. Unfortunately, we shall never know what the acquaintance’s testimony would have been, much less the effect of same upon the findings of the referee.