**BOARD OF EDUCATION OF HARRODS-BURG, Kentucky, et al., Appellants,**

**v.**

**Joy Burgin BENTLEY, Appellee.**

Court of Appeals of Kentucky.

Oct. 30, 1964.

W. Earl Dean, Harrodsburg, for appellants.

John L. Keller, Harrodsburg, for appellee.

DAVIS, Commissioner.

This appeal tests the validity of a school board regulation requiring that any student who shall marry shall withdraw from the school, subject to being readmitted after one year. The trial court adjudged that the regulation is invalid and granted a permanent injunction against enforcement of the regulation as applied to appellee.

The Board of Education of Harrodsburg Independent School District (hereinafter designated as the Board) duly adopted the questioned resolution in 1957; the text of the resolution is:

"Any student, either boy or girl, who marries, automatically must withdraw immediately from school and cannot re-enter school for one full year, and then only as a special student with permission of the principal. A special student cannot attend home room or study halls or enter into any class activities, social events or athletics. If, upon re-entering school after the year has elapsed, the student becomes pregnant, she will automatically withdraw until after the birth of the child."

The record reflects that the Board's policy, as enunciated by the resolution, was widely publicized, and was known to the appellee prior to the time of her marriage. Although the text of the resolution remained unchanged, it is admitted that the Board had uniformly followed the policy of permitting a student to complete the six-week term in progress at the time of the marriage.

Appellee was a regularly enrolled student at Harrodsburg High School and a member of the junior class when she married April 10, 1964. The six-week term then current lacked one and a half weeks of completion. Appellee was permitted to remain as a student until the close of that six-week period; she was required to withdraw from school and dropped from its rolls April 24, 1964.

Appellee then enrolled in Mercer County High School, but remained there only a day and a half. Her mother withdrew her from that school, and sought to have her reinstated in Harrodsburg High School. The Board, at a specially called session, heard the request of appellee and her parents, but expressed the view that it could not make an exception as to appellee since it had uniformly invoked the rule theretofore. This suit resulted.

Certain fundamental precepts were recognized by the trial court, and are acknowledged by the litigants:

■ The Board is vested with the duty and power to control and manage the Harrodsburg High School. The Board is authorized to enforce reasonable regulations, including disciplinary rules. KRS 160.160; 160.290; 160.370.

■ The Board is empowered to suspend or expel pupils for violations of lawful regulations of the school. Other grounds for suspension or expulsion are prescribed. KRS 158.150.

■ The government and conduct of public schools, in general, is committed to the discretion of the school board. Courts will not interfere with the board's exercise of such discretion unless it appears the board has acted arbitrarily or maliciously. Casey County Bd. of Ed. v. Luster, Ky., 282 S.W.2d 333, and authorities therein discussed.

It is also recognized by all that KRS 158.100 mandatorily directs that each board of education shall provide public educational facilities for residents of its district who are under twenty-one years of age. There is no specific statutory provision dealing with the matter of married pupils under age twenty-one.

With these accepted principles in mind, we turn to the specific controversy at bar. The appellee was sixteen years old at the time of her marriage. The marriage ceremony was publicly performed in a Harrodsburg church. The marriage must have been approved by appellee's parents, pursuant to the provisions of KRS 402.210, although the record is silent as to that.

There is no suggestion that any sensationalism or scandal preceded or followed the wedding. It is admitted that appellee is now, and has been throughout her lifetime, a moral and respectable person. There has been no complaint of misbehavior or misconduct on her part. She has maintained a creditable, above average scholastic record.

For the Board, it was shown that the 1957 regulation had been adopted, upon public demand of parents and patrons, by reason of an "epidemic" of marriages of high school students. Moreover, the Board predicated its policy upon its belief, from experience and counsel of its superintendent, that such marriages during school term cause discussion and excitement, thereby disrupting school work and leading to dropping out of school. The Board expressed its view that student marriage is detrimental to the best interests and welfare of a good and successful school system.

It is recalled that the regulation in question provides for readmission of a married student after "one full year, and then only as a special student with permission of the principal." However, the record reflects that it has been the uniform policy in enforcement of the rule that the married student be permitted to complete the current six-week term. It was explained that the disruptive impact of student marriage is by reason of widespread student body discussion and excitement just prior to and just following the marriage. Apparently, the regulation as originally promulgated sought to alleviate the disruption generally said to be attendant at the time just before and just following the marriage. As noted, however, quite the opposite practice has been consistently followed. The pupil (including the present appellee) is allowed to remain actively in full school routine during the immediate time following the mar-

riage—but no longer than the end of the then current six-week term.

■ It is accepted, of course, that marriage is favored by public policy. 35 Am. Jur., Marriage, § 3. The General Assembly has imposed various requirements looking toward preservation of the institution of marriage. KRS Chapter 402. Specifically, Kentucky's legislature has placed its sanction upon marriage of a female who has attained age sixteen. KRS 402.020(5). The safeguard of written consent from one in *loco parentis* is demanded for marriage participants under age twenty-one. KRS 402.210.

On the other hand, no question arises as to the sincerity of purpose of the Board here. It has acted upon the counsel of its superintendent and its own experience in administration of the affairs of the school under its jurisdiction. We have neither the right nor the inclination to substitute our view for the Board's view as to the exercise of its sound discretion as it relates to matters within the province of the Board's responsibilities. It does become our function to examine the regulation and determine whether it is unreasonable or arbitrary, and therefore illegal. (There is no suggestion that the Board has acted maliciously.) In 47 Am.Jur., Schools, § 155, it is said:

> "However, a pupil may not be excluded from school because married, where no immorality or misconduct of the pupil is shown, nor that the welfare and discipline of the pupils of the school is injuriously affected by the presence of the married pupil."

In support of that text is cited McLeod v. State ex rel. Colmer, 154 Miss. 468, 122 So. 737, 63 A.L.R. 1161. Our attention has been directed to other decisions from sister jurisdictions as touching upon the question at bar. See Nutt v. Bd. of Ed. of City of Goodland, 128 Kan. 507, 278 P. 1065; Cochrane v. Bd. of Ed. of Mesick, 360 Mich. 390, 103 N.W.2d 569; Kissick v. Garland Independent School Dist., Tex.Civ. App., 330 S.W.2d 708; State ex rel. Indiana High School Athletic Ass'n v. Lawrence Circuit Court, 240 Ind. 114, 162 N.E. 2d 250; State v. Chamberlain (Com.Pl.Ct. of Ohio), 175 N.E.2d 539; State ex rel. Baker v. Stevenson, (Com.Pl.Ct. of Ohio), 189 N.E.2d 181; State ex rel. Thompson v. Marion County Bd. of Ed., 202 Tenn. 29, 302 S.W.2d 57. It may be observed that the Tennessee decision just cited is the only one which may be said to lend support to the position of the Board here. In most of the cases just cited the courts upheld regulations prohibiting married students from certain cocurricular and extracurricular activities. In so doing, the courts adverted to the factor that the particular board was not making marriage, *ipso facto,* the basis for denial of the student's right to obtain an education.

For the appellee it is pointed out that all persons meeting the residence, moral and mental qualifications are entitled to an opportunity for publicly furnished education until attaining age twenty-one. In today's economy we judicially note the increasing demand for education as a prerequisite for employment. Certainly, there is no reason to suppose that the marriage of a student will diminish the need of that student for an education—indeed, just the contrary would appear the case.

■ It is our conclusion that the decision of the trial court is correct; the instant regulation is arbitrary and unreasonable, and therefore void. The fatal vice of the regulation lies in its sweeping, advance determination that every married student, regardless of the circumstances, must lose at least a year's schooling. Moreover, the manner of enactment of the regulation accentuates the fact that the regulation is not really related to its purported purpose. It is asserted for the Board that the most intense disruptive impact of a student marriage occurs during the time just preceding and just following the marriage. Yet, under the uniformly

followed pattern of administration of this regulation, the married student is permitted to remain in school during all of the time preceding the marriage, and may remain for a maximum of six weeks thereafter. Such procedure, even though premised on the Board's commendable desire to permit the student to complete the current term, effectively frustrates the prime purpose of the regulation. Additionally, after it may be reasoned that the disturbing influence of the event has subsided, the situation is returned to the "spotlight" of student attention by compelling withdrawal of the married student; after a year, assuming the principal is willing, the student is to be reinstated, thus injecting another occasion for student body agitation.

The regulation has a further inherent weakness in that it merely provides that a married student *may* be permitted to resume school if, but only if, the principal permits it. Of course, we will not assume that the principal would arbitrarily deny permission —but there is a complete absence of any standard or guideline for the principal; neither has the ousted student any gauge by which to estimate whether the principal's consent will be forthcoming after a year.

Implicit in this record is the desire of the Board to permit this appellee to "work something out" so that her education would not be interrupted. A review of the Board's minutes warrants the conclusion that the Board felt that its hands were tied—principally because it never had made any previous exception in such cases. The unreasonable and arbitrary effect of the regulation is thus demonstrated, since it imposes the identical result in every case, without regard to the circumstances of any case. The Board's discretion is foreclosed in advance, no matter what the facts. Such prejudgment is unreasonable and arbitrary.

We are not to be understood here as deciding that some reasonable and appropriate regulation in this area may not be adopted; we do hold the instant regulation invalid.

Without undertaking to restate the arguments which may be advanced in support of either side of the question, we state that we are persuaded that the view quoted (47 Am.Jur., Schools, Sec. 155) is sound. Consequently, it is our holding that the regulation here is an arbitrary and unreasonable one.

The judgment is affirmed.