Colin PETREY

v.

Gene FLAUGHER et al.

Civ. A. No. 80–165.

United States District Court,
E. D. Kentucky,
Covington Division.

Jan. 28, 1981.

Kathleen Cunningham, Richard Cullison, Northern Kentucky Legal Aid, Covington, Ky., for plaintiff.

Robert W. McGinnis, Butler, Ky., for defendants.

## MEMORANDUM OPINION

BERTELSMAN, District Judge.

### FACTS

The plaintiff is a high school student who was expelled from the county public high school by the Board of Education of Pendle-

ton County, Kentucky, for smoking marijuana in school. He was caught by the principal who was paying a routine visit to an outdoor tobacco smoking area.

Plaintiff had had some fairly serious disciplinary problems prior to this time and had been threatened with suspension or expulsion on at least one occasion, but this was his first offense in violation of the school alcohol and drug policy. Expulsion for possession of alcohol or drugs in school is specifically authorized by statute. K.R.S. 158.150. Under generally prevailing Kentucky public school practice, the expulsion was for the remainder of the school year.

As a matter of fact, the plaintiff was readmitted to school after the initial hearing in this case as part of a compromise by which he waived certain procedural due process claims. There remains before the court, however, the question of the propriety of the expulsion for this offense, because the plaintiff is still seeking to have the expulsion expunged from his record.

## THE DOCTRINE OF SUBSTANTIVE DUE PROCESS

Plaintiff argues that his expulsion for the balance of the school year is a punishment so excessive when weighed against his offense of smoking marijuana in school that it infringes his constitutional rights. He bases this contention on the doctrine of substantive due process.

"The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the

adequacy of the procedures employed has come to be known as substantive due process." [1]

Space does not permit an exhaustive discussion of the history of substantive due process in this opinion. Its rationale may be summarized as follows:

"[T]he full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This 'liberty' is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, and religion; the right to keep and bear arms; the freedom from unreasonable searches and seizures; and so on. It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints, ... and which also recognizes, ... that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgement." [2]

Courts have experienced great difficulties in dealing with the theory of substantive due process. The basic problem is that, once courts begin to enforce rights that are not specifically enumerated in the Constitution, the door is left open to wide judicial discretion in defining these rights. Although it is now undisputed that there are unenumerated rights,[3] whether under the heading of the Due Process Clauses or the Ninth Amendment,[4] the power to define

1. Comment, *Developments in the Law—The Constitution and the Family*, 93 Harv.L.Rev. 1156, 1166 (1980) [hereinafter Harvard Comment.]

2. *Poe v. Ullman*, 367 U.S. 497, 543, 81 S.Ct. 1752, 1776, 6 L.Ed.2d 989 (1961) (Harlan, J. dissenting). *See* Tribe, *American Constitutional Law* § 11–3 (1978) [hereinafter cited as Tribe].

3. *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Kelley v. Johnson*, 425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708 (1976). "History suggests that we are simply not prepared to live with the notion that the government is

free to trample any right not specifically enumerated in the text." Harvard Comment, *supra* note 1 at 1175.

4. U.S. Constitution, Amendment IX reads: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." *See* Tribe, Chapter 11; J. Ely, *Democracy and Distrust*, Chapter 2 (1980) [hereinafter cited as Ely]; Bertelsman, *The Ninth Amendment and Due Process of Law—Toward a Viable Theory of Unenumerated Rights*, 37 U.Cin.L.Rev. 777 (1968); Harvard Comment, *supra* note 1, at 1166 ff.

such rights has been abused by courts in the past.[5] Therefore, there is a reluctance to open the door to abuse it again by recognizing a broad judicial power to cut new unenumerated rights out of whole cloth. In their willingness to recognize new unenumerated rights the courts have been constrained by the sepulchral influence of "Lochner's ghost,"[6] reminding them of the era when judges imposed "their own notions of constitutional right and wrong into the 'vague contours of the Due Process Clause.' "[7]

Haunted by "Lochner's ghost," courts have been unable totally to agree on a workable doctrine of unenumerated rights.[8] It is clear, however, that if unenumerated rights are to be recognized, they must in some way be able to be classified as fundamental, as objectively determined from historical analysis,[9] so that there may be some restraint on the ability of courts to create new rights according to their own unchecked philosophy as they did in the era of Lochner and the other economic liberty decisions.

" 'Appropriate limits on substantive due process come not from drawing arbitrary lines but rather from careful 'respect for the teachings of history [and] solid recognition of the basic values that underlie our society. *Griswold v. Connecticut*, 381 U.S. at 501, [85 S.Ct., at 1691] (1965) (Harlan, J., concurring)'." [10]

## SUBSTANTIVE DUE PROCESS AND DISCIPLINE IN THE PUBLIC SCHOOL

Applying this background to the problem of discipline in the public schools, we find that some courts have indeed, said that there is a substantive due process limitation on the severity of disciplinary sanctions imposed on students in public educational institutions.[11] The school opinions do not relate their analysis to the substantive due process authorities in other contexts, as dis-

---

**5.** *See e. g., Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905); discussion in authorities in note 4, *supra*.

**6.** *See* Bertelsman, *supra* note 4 at 784. "As the history of the *Lochner* era demonstrates, there is reason for concern lest the only limits to such judicial intervention become the predilections of those who happen at the time to be Members of this Court." *Moore v. City of East Cleveland*, 431 U.S. 494, 502, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977).

**7.** *Griswold v. Connecticut*, 381 U.S. 479, 501, 85 S.Ct. 1678, 1690, 14 L.Ed.2d 510 (1965) (Harlan, J., concurring).

**8.** *See Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (disagreement whether equal protection or substantive due process analysis appropriate); *Griswold v. Connecticut, supra* (statute making it a crime for married couples to use contraceptives unconstitutional; Court reasoned that the enumerated rights create "penumbras."); *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (city ordinance strictly limiting relatives who could live together as a "family" unconstitutional). *But see Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical*, 348 U.S. 483, 487–8, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed.

469 (1952). Two of the most eminent contemporary constitutional scholars are in sharp disagreement over the proper scope of the courts' power to enforce unenumerated rights. Professor Tribe favors broadening that scope even to recognizing a constitutional right to a "decent level" of welfare. Tribe, 573–4. Professor Ely would narrow the scope to the vanishing point on the ground that judges can use any formula to create any right they wish. Ely, Chapters 2 and 3. *See* Harvard Comment, *supra* note 4, at 1176–77.

**9.** *Cf. Wolf v. Colorado*, 338 U.S. 25, 28–30, 69 S.Ct. 1359, 1361–62, 93 L.Ed. 1782 (1949) (tradition of the English-speaking people); *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 151, 82 L.Ed. 288 (1937) (principles rooted in the tradition and conscience of our people). *See* Harvard Comment, *supra* note 1, at 1177 ff.

**10.** *Moore v. City of East Cleveland*, 431 U.S. at 503, 97 S.Ct. at 1937; *See* Harvard Comment, *supra* note 1, at 1177 ff.

**11.** *Lee v. Macon County Board of Education*, 490 F.2d 458, (5th Cir. 1974); *Cook v. Edwards*, 341 F.Supp. 307 (D.N.H.1972); *Knight v. Board of Education*, 38 Ill.App.3d 603, 348 N.E.2d 299 (1976). It is not clear whether *Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975), confirms this view or not.

cussed above. A leading school substantive due process case did, however, emphasize the need for judicial self-restraint in applying the substantive due process doctrine in public school disciplinary cases.[12]

■ Synthesizing the substantive due process school cases with the other lines of substantive due process cases, the following principles emerge.

1. A substantive due process or Ninth Amendment right, not expressly found in the text of the Constitution, must be one that is fundamental, able to be recognized as such by reference to the teachings of history and the basic values that underlie our society. Such historical reference is necessary because of the need for an objective standard,[13] so that judges may not elevate their purely personal, political and social views to constitutional dignity merely by labelling them "fundamental."

2. After, but only after, a right has been identified as fundamental[14] in the light of history and tradition, the law regulating it is subjected to strict scrutiny by the court, to determine if the regulation is justified by a sufficient, but not necessarily compelling, state interest.[15]

3. Students do not shed their constitutional rights, including those of substantive and procedural due process, at the schoolhouse gate.[16]

4. However, the prerogative of managing the public schools belongs to the states and the boards of education and administrators to whom the state has delegated it. The federal courts have the power to supersede their decisions only where their actions are clearly unconstitutional.[17]

12. "Such a case [where a court should set aside an unduly severe punishment] can, of course, arise. Clearly, for example, a school board could not constitutionally expel forever a pupil who had committed no offense other than being five minutes tardy one time.
"In the landmark case of *Dixon v. Alabama State Board of Education*, 294 F.2d 150, 157 (CA5, 1961), this court wrote the following:
" 'Turning then to the nature of the governmental power to expel the plaintiff, it must be conceded ... that that power is not unlimited and cannot be arbitrarily exercised. Admittedly, there must be some reasonable and constitutional grounds for expulsion ·or the courts would have a duty to require reinstatement.'
"This passage and the constitutional provision it elaborates do not license federal judges to review and revise school board disciplinary actions at will. Application is limited to the rare case where there is *shocking disparity between offense and penalty*." *Lee v. Macon County Board of Education*, 490 F.2d at 460 N.3 (emphasis added).

13. *See* Bertelsman, *supra* note 4, at 788–89.

14. The case of *Beller v. Middendorf*, 632 F.2d 788, 808–09 (9th Cir. 1980) seems to say that all regulating legislation may be judicially reviewed by a balancing process in which the importance of the individual action regulated is balanced against the need for and the extent of the action. If this is what that court meant, this court must respectfully disagree with its analysis. If such an approach were followed, courts could review and in effect veto all legislation, a power the Constitution does not give them. In a sense, substantive due process requires a two-tier analysis, the first tier being the axiom that all legislation must have at least a rational basis. *Williamson v. Lee Optical*, 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). After that, however, there is only one other tier, and the second level of analysis is not to be utilized unless a fundamental right is involved. *See* Harv. Comment, *supra* note 1, at 1183.

15. *Zablocki v. Redhail*, 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978); *Moore v. City of East Cleveland*, 431 U.S. at 499, 97 S.Ct. at 1935. *See* Harvard Comment, *supra* note 1, at 1193–97.

16. *Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975); *Tinker v. Des Moines School District*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). Cases in note 11, *supra*.

17. *Wood v. Strickland*, 420 U.S. at 326, 95 S.Ct. at 1003; *Bright v. Nunn*, 448 F.2d 245, 249 (6th Cir. 1971). It may be noted that the Kentucky state courts have a far broader scope of review for "arbitrariness" in school decisions than do federal courts. Kentucky Constitution § 2 reads:
"Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."
*See, e. g., Board of Education v. Bently*, Ky., 383 S.W.2d 677 (1964); *Casey County Board of Education v. Luster*, Ky., 282 S.W.2d 333 (1955). *Cf. Morris v. City of Catlettsburg*, Ky., 437 S.W.2d 753 (1969).

## NO FUNDAMENTAL RIGHT IS INVOLVED HERE

■ With these principles in mind, the court turns to the case at bar. It is unlikely that the right to a free, public education, however important it may have become as a practical matter, could be said to be a fundamental right rooted in the history and traditions of our people to the extent that the state could not abolish it, if done in a non-discriminatory manner. Nor is there an individual fundamental right invoked here, such as freedom of speech,[18] religion,[19] or the right to travel or to marry.[20]

■ There is no constitutional right, fundamental or otherwise, to smoke marijuana in school. Nor, is there anything unconstitutional about having discipline in a high school—even strict discipline.

There is no constitutional right to be free from an appropriate degree of discipline, if one is affiliated with an organization where discipline is necessary, such as a team, a military unit, a police force, or a high school. Even enumerated rights, such as those guaranteed by the First Amendment, are limited by the need for discipline, commensurate with the nature of the organization to which one belongs.[21]

■ The heritage of our civilization to which we look to discern the fundamental rights which may be enforced under the doctrine of substantive due process or the Ninth Amendment requires that, rather than having a right to be free from discipline, a young person has a need to be subjected to constructive discipline. Preeminent among the values of our people, which our Constitution was designed to preserve and enhance, are family values.

"The Constitution protects the sanctity of the family, because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural." [22]

Essential to the functioning of a family, or the school as a substitute for the family, is discipline. The traditions of our culture recognize that due discipline [23] in the rearing of the young is necessary and wholesome, rather than a violation of personal rights. It has been said:

"... what son is there whom his father does not discipline? If you are left without discipline, in which all have participated, then you are illegitimate children and not sons ... For the moment all discipline seems painful rather than pleasant; later it yields the peaceful fruit of righteousness to those who have been trained by it." [24]

## THE PENALTY IS NOT EXCESSIVE

■ If a penalty is so grossly disproportionate to the offense as to be arbitrary in the sense that it has no rational relation to any legitimate end, it may be a violation of equal protection or substantive due proc-

---

18. *See Tinker v. Des Moines School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

19. *See West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

20. *Cf. Board of Education of Harrodsburg v. Bentley*, Ky., 383 S.W.2d 677 (1964).

21. *See Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) and *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (military); *Kannisto v. City and County of San Francisco*, 541 F.2d 841 (9th Cir. 1976) and *Magri v. Giarrusso*, 379 F.Supp. 353 (E.D. La.1974) (police); Note, *Free Speech and Impermissible Motive in the Dismissal of Public Employees*, 89 Yale L.J. 376, n.43 (1979). The need for discipline appropriate to an organization has also been recognized in substantive due process and equal protection cases. *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1975) (police force can regulate officers' hair length); *Beller v. Middendorf*, 632 F.2d 788 (9th Cir. 1980) (navy can prohibit homosexual practices).

22. *Moore v. City of East Cleveland*, 431 U.S. at 503, 504, 97 S.Ct. at 1938, 1939.

23. "Discipline" is used here in the sense of training as well as punishment.

24. Hebrews, Chapter 12, vv. 5–11 (Revised Standard Version).

ess.[25] But that is not the case here. Far from being a trivial matter, as contended by the plaintiff, his offense was of sufficient gravity to justify expulsion for the remainder of the school year. This has been expressly declared by statute.[26]

The evidence in this case shows that the Board of Education and administrators of this rural school system have mounted a determined effort to see that drugs do not infiltrate their schools. Their efforts are to be commended, rather than undermined by this court.

Although the measures taken by the defendant here were drastic, drastic measures are needed. The public and private schools across our country are experiencing dire difficulties to the extent that their effectiveness, and even sometimes their very existence, are seriously threatened. Abuse of alcohol and drugs is a prime factor in this crisis. Thus there is a rational basis for the statute authorizing expulsion for possession of alcohol or drugs in school and for the action of the Board in the individual case. The defendants were justified in taking this situation into account in imposing the stringent sanctions they did upon the plaintiff. They were justified in considering, as courts do in imposing criminal sentences, the deterrent effect[27] on other students, and to use strict discipline to keep drugs out of their school.[28]

Under these circumstances, this court cannot say that the discipline imposed was excessive to the extent of violating the plaintiff's right of substantive due process. Therefore, the complaint must be dismissed. A judgment to that effect has been entered concurrently herewith.

---

**25.** *Cf. Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *Lee v. Macon County Board of Education*, quoted *supra* note 11.

**26. K.R.S. 158.150 Suspension or expulsion of pupils**

"(1) All pupils admitted to the common schools shall comply with the lawful regulations for the government of the schools. Willful disobedience or defiance of the authority of the teachers or administrators, use of profanity or vulgarity, assault or battery or abuse of other students or school personnel, the threat of force or violence, the use or possession of alcohol or drugs, stealing or destruction or defacing of school property or personal property, the carrying or use of weapons or dangerous instruments, or other incorrigible bad conduct on school property as well as off school property at school sponsored activities constitutes cause for suspension or expulsion from school.

"(2) A pupil shall not be suspended from the common schools until after at least the following due process procedures have been provided;

(a) The pupil has been given oral or written notice of the charges against him which constitute cause for suspension;

(b) The pupil has been given an explanation of the evidence of the charge or charges if the pupil denies them; and

(c) The pupil has been given an opportunity to present his own version of the facts relating to the charge or charges.

These due process procedures shall precede any suspension from the common schools unless immediate suspension is essential to protect persons or property or to avoid disruption of the ongoing academic process. In such cases, the due process procedures outlined above shall follow the suspension as soon as practicable, but not later than three (3) school days after the suspension.

(3) The superintendent, principal or head teacher of any school may suspend a pupil but shall report such action in writing immediately to the superintendent and to the parent, guardian or other person having legal custody or control of the pupil. The board of education of any school district may expel any pupil for misconduct as defined in subsection (1), but such action shall not be taken until the parent, guardian or other person having legal custody or control of the pupil has had an opportunity to have a hearing before the board. The decision of the board shall be final.

**27.** *Fisher v. Burkburnett Independent School District*, 419 F.Supp. 1200 (N.D.Tex.1976). To the extent that *Cook v. Edwards*, 341 F.Supp. 307 (D.N.H.1972) holds to the contrary, this court respectfully disagrees with that decision.

**28.** *Cf. Mitchell v. Board of Trustees*, 625 F.2d 660 (5th Cir. 1980) (upholding penalty of automatic expulsion for possessing weapon in school).