**Patrick KATCHAK, et al., Plaintiffs,**

v.

**GLASGOW INDEPENDENT SCHOOL SYSTEM and John W. McCarley, Defendants.**

**Civ. A. No. c-87-0176-BG(M).**

United States District Court, W.D. Kentucky, Bowling Green Division.

Feb. 16, 1988.

Daniel T. Taylor, III, Louisville, Ky., H. Jefferson Herbert, Jr., Glasgow, Ky., for plaintiffs.

F.C. Bryan, Bryan, Fogle & Chenoweth, Mt. Sterling, Ky., Uhel O. Barrickman, Richardson, Barrickman, Dickinson & Ropp, Glasgow, Ky., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

MEREDITH, District Judge.

This case is before the Court on the motion of plaintiffs for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and the defendants' motion to dismiss for failure to state a claim. This Court having reviewed the record, heard evidence presented at the January 27, 1988 hearing on the matter and otherwise being sufficiently advised, enters the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff's are high school seniors at Glasgow High School, Glasgow, Kentucky, and are both members of the Beta Club and the Glasgow High School Baseball Team.

2. Defendants are the Glasgow Independent School District and the principal, John W. McCarley, at Glasgow High School.

3. The conduct of students at Glasgow High School is subject to the provisions of the Discipline Code of the Glasgow Independent Schools (Defendants' Exhibit No. 2) and the Glasgow High School Handbook ("Handbook") (Defendants' Exhibit No. 1).

4. A copy of the Handbook is distributed to all Glasgow High School students within the first week of the new school year. In October of 1987, John W. McCarley, Glasgow High School Principal, read over the public address system portions of the Handbook. In the three previous years in which plaintiffs were also students, McCarley read the entire Handbook to all the students and responded to questions that the students raised regarding the Handbook provisions.

5. Section II of the General School Regulations and Code of Conduct in the Handbook states:

> All students are encouraged to participate in extra-curricular activities of the school; however, any student proved to be using or in possession of alcoholic beverages ... will be suspended from all extracurricular activities for an indefinite period, but not less than the remainder of the school year.

6. As members of the Glasgow High School Beta Club, plaintiffs participated in a Beta Club Convention at the Galt House in Louisville, Kentucky, on December 4, 5 and 6, 1987. Kay Gupton, Glasgow High School Guidance Counselor, and James Nelson, Glasgow High School Teacher, served as sponsors for the event.

7. Prior to participation in the Convention, plaintiffs were required to sign an acknowledgment of their understanding and acceptance of the Beta Convention Code of Conduct. (Plaintiffs' Exhibit No. 1). Paragraph 2 of the Code of Conduct prohibited possession of alcoholic beverages at extra-curricular activities.

8. Gupton and Nelson testified that they were first alerted to students drinking alcoholic beverages at the Convention on Saturday morning at 2:30 A.M., December 5, 1987. Plaintiffs were not involved in this incident.

9. While conducting room checks at 12:30 P.M. on Sunday, December 6, 1987, Nelson and Gupton testified that they found two adjoining student rooms to be in a mess and found a towel in the trash can with the odor of alcohol and evidence of vomit. Gupton later asked Katchak if he

had been drinking alcohol and he admitted that he had.

10. Upon their return to Glasgow, Nelson and Gupton testified that they gathered all the students involved in the Beta Convention in the cafeteria. Nelson and Gupton asked those that had been drinking to stay and all others to leave. Hodges left then returned within two to three minutes. Hodges asked Nelson if he would have gotten away with the drinking if he had not returned to the cafeteria.

11. Principal McCarley testified that he talked individually with the thirty students who participated in the Convention with one or both sponsors present. Nineteen of those students were brought back to McCarley. McCarley, with the Assistant Principal, Coy Meadows, talked with those nineteen students who were told of the charges against them, of the evidence, were asked if they understood and then announced that they were suspended for five days. Each student was given an opportunity to ask questions and an opportunity to respond.

12. Letters of suspension were mailed to each student by McCarley stating the suspension period, December 9 through 15, 1987, and, in addition, the suspension from extra-curricular activities.

13. The suspensions were reviewed by the School Board and approved.

14. Initially, suspended students were prohibited from taking make-up tests but that policy was subsequently relaxed. However students were not allowed to take quizzes or turn in homework for the suspension period.

15. Katchak and Hodges, as baseball team members, were precluded from participation in this extra-curricular activity. Katchak and Hodges were either not participants in or were not precluded from participation in any other extra-curricular activity.

16. David Johnson, Glasgow High School Math Teacher, testified that letter grades for both Katchak and Hodges were the same even without the quiz and homework assignment credit. Johnson acknowledged that the numeric grade would vary though the letter grade did not and that the numeric grade was a part of the permanent school record.

17. Neither Katchak nor Hodges applied for extra-curricular scholarship programs and thus were unaffected by any impact the suspension had on scholarship programs.

18. Katchak alleged that the suspension will adversely affect his opportunity to obtain a college baseball scholarship but supported that allegation only with letters of interest which were primarily generated by the Glasgow High School Baseball Coach, Sam Royce.

### Conclusions of Law

1. Injunctive relief is an extraordinary remedy and is proper only upon a finding of four crucial factors:

(1) the likelihood of plaintiff's success on the merits;

(2) whether the injunction will save the plaintiff irreparable injury;

(3) whether the injunction would harm others; and

(4) whether the public interest would be served by the injunction.

*In Re DeLorean Motor Co. v. DeLorean*, 755 F.2d 1223, 1228 (6th Cir.1985). Balancing all four factors is necessary unless fewer are dispositive of the issue. *DeLorean*, 755 F.2d at 1228.

2. This action is founded on asserted Constitutional violations of the due process and equal protection clauses of the United States Constitution. Plaintiffs were on notice that their drinking at a school activity would subject them to suspension from school and extra-curricular activities. The Beta Convention Code of Conduct prohibited possession of alcoholic beverages and warned that violators "may be subject to further punishment as deemed necessary by school officials." (Plaintiffs' Exhibit No. 1). The school Handbook warned that persons using or possessing alcoholic beverages during extra-curricular events "will be suspended from all extracurricular activities." (Defendants' Exhibit No. 1).

Furthermore, Kentucky Revised Statutes 158.150 provides in pertinent part:

(1) All pupils admitted to the common schools shall comply with the lawful regulations for the government of the schools:

(b) ... the use or possession of alcohol ... off school property at school sponsored activities constitutes cause for suspension ... from school.

No evidence was introduced which demonstrated that plaintiffs were not aware of the ramifications of their actions.

■ 3. The due process requirements for suspension adopted from *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) and codified in Kentucky Revised Statutes 158.150(2) are:

"A pupil shall not be suspended from the common schools until after at least the following due process procedures have been provided:

(a) The pupil has been given oral or written notice of the charge or charges against him which constitute cause for suspension;

(b) The pupil has been given an explanation of the evidence of the charge ... if the pupil denies them; and

(c) The pupil has been given on opportunity to present his own version of the facts relating to the charge ..."

Principal McCarley testified that each of the above requirements were met and no proof controverts that testimony. Plaintiffs have failed to demonstrate that they were denied procedural due process.

■ 4. The substantive due process argument espoused in the case at bar is that the punishment, that is the five day suspension from school and the suspension from the basesball team, is unreasonable in light of the drinking infraction. Judge Bertelsman of the Eastern District of Kentucky very ably set forth the Constitutional roadmap for deciding the above-described argument in *Petrey v. Flaugher*, 505 F.Supp. 1087 (E.D.Ky.1981):

"1. A substantive due process or Ninth Amendment right, not expressly found in the text of the Constitution, must be one that is fundamental, ...

2. After, but only after, a right has been identified as fundamental in the light of history and tradition, the law regulating it is subjected to strict scrutiny by the court, to determine if the regulation is justified by a sufficient, but not necessarily compelling state interest.

3. Students do not shed their constitutional rights, including those of substantive and procedural due process, at the schoolhouse gate.

4. However, the prerogative of managing the public schools belongs to the states and the boards of education and administrators to whom the state has delegated it. The federal courts have the power to supersede their decisions only where their actions are clearly unconstitutional."

*Petrey*, 505 F.Supp. at 1090. In *Petrey*, the student was expelled from high school when he was caught smoking marijuana on school property. Though the facts in the case *sub judice* are less severe and certainly, the punishment is less severe than in *Petrey*, the principles are identical.

"There is no constitutional right to be free from an appropriate degree of discipline, if one is affiliated with an organization where discipline is necessary, such as ... a high school. Even enumerated rights, such as those guaranteed by the First Amendment, are limited by the need for discipline, commensurate with the nature of the organization to which one belongs."

*Petrey*, 505 F.Supp. at 1091. The appropriate nature of the discipline in the case at bar, is evidenced by the holding of the Kentucky Court of Appeals in *Clark County Board of Education v. Jones*, 625 S.W. 2d 586 (Ky.App.1981). In *Clark County* the trial court voided a school regulation that mandated suspension for the use of alcohol even though it was a first offense. The Kentucky Court of Appeals reversed the trial courts decision holding that the school regulation did not exceed the scope of K.R.S. 158.150. More simply put, mandatory suspension for alcohol use on a school sponsored trip was appropriate.

Plaintiffs have failed to adduce proof or caselaw that demonstrates that the five-day suspension from school and the suspension from playing baseball was unreasonable. Students have no fundamental constitutional right to be free from appropriate discipline. Absent a fundamental right, the Court must determine if a rational relationship exists between the Handbook provision prohibiting use of alcohol and the potential suspension for a violation thereof. The *Petrey* court found that "rather than having a right to be free from discipline, a young person has a need to be subjected to constructive discipline." *Petrey*, 505 F.Supp. at 1091. "The traditions of our culture recognize that due discipline in the rearing of the young is necessary and wholesome, rather than a violation of personal rights." *Petrey*, 505 F.Supp. at 1091.

This Court finds that no grounds exist for determining that the actions of the high school principal or the school board were unconstitutional. Absent such a finding, the plaintiffs are unlikely to succeed on the merits of their case and cannot meet the threshold requirement for imposition of injunctive relief.

■ 5. Furthermore, no evidence was introduced at the hearing which would support a finding of irreparable injury. As defendants note, Katchak's chances of a baseball scholarship were at this time, somewhat speculative, despite the letters of interest he received. The impact of the missed quiz and homework assignments were *de minimis* where the letter grade did not change and the grade reflects performance for only a nine-week period rather than a semester grade.

6. The Court finds and common sense tells us that enjoining the imposition of discipline by Glasgow High School would far outweigh any speculative harm that might occur to the plaintiffs. Appropriate discipline is the vehicle by which curious, energetic young people must be managed so that a proper learning environment is maintained. Furthermore, the public has a strong interest in cultivating that learning environment by maintaining proper discipline in the public schools. The Court finds

that in balancing the *DeLorean* criteria, injunctive relief is clearly improper and unwarranted.

7. Pursuant to the provisions of Rule 12(b) of the Federal Rules of Civil Procedure, a motion to dismiss under Rule 12(b)(6) may be treated as a motion for summary judgment where "matters outside the pleading are presented to and not excluded by the court." In a motion for summary judgment, the Court must consider whether any genuine issues of material fact exist and if not, whether defendant is entitled to judgment as a matter of law.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court, having found that the discipline imposed was not unreasonable and thus constitutional and that no material factual disputes exist, defendant is entitled to judgment as a matter of law. (The record should reflect that the Court took the plaintiffs' advice and considered all tendered affidavits regarding the motion to dismiss.)

### Conclusion

Finally, during the course of the hearing when the learned counsel for the plaintiffs was making reference on occasion to the Bard from Stratford-on-Avon, William Shakespeare, I told him I was surprised he did not summon up the words of the noted English poet, Alexander Pope, who said in his "Essay on Criticism: 'To err is human, to forgive, divine.'" Alas, he took the Court's advice and did so in his response to the defendants' motion to dismiss. However, the law on the issue at hand as stated in the Conclusions of Law more closely emulates something else Alexander Pope wrote in the Eighteenth Century. The lines I refer to were on a small card which was attached to the high school diploma which I received some twenty-five years ago and for some inexplicable reason re-

main indelible in my mind: "Tis education forms the common mind, just as the twig is bent the tree's inclined."

Education as we know it is just as crucial today in the development of any young man or young woman as it was in Pope's time. An integral part of that education is discipline. There are rules of discipline that each of us have to abide by throughout our lives, whether we are in high school, college, or adults required to obey the laws of our land. The two primary plaintiffs in question appear to be nice young men who can have very bright futures if they apply themselves and abide by the rules, be it in high school or life. All of us have made mistakes which we have had to pay for in some fashion. If we learn that lesson as "twigs," hopefully it will remain with us as "trees." I have to believe it is much more desirable to discover this basic principle sooner, when the stakes are lower, than later. Both the current law and Pope's aphorism on education seem to endorse that basic principle. I concur.

IT IS HEREBY ORDERED that the motion for preliminary injunction be and hereby is denied and the motion to dismiss for failure to state a claim treated here as a motion for summary judgment be and hereby is granted for the reasons stated herein.

This is a final and appealable Order.

### JUDGMENT

This case is before the Court on the motion of plaintiffs' for a preliminary injunction, the motion to dismiss on behalf of defendants converted to a motion for summary judgment pursuant to Rule 12 of the Federal Rules of Civil Procedure and the motion to strike affidavits on behalf of defendants. The Court being sufficiently advised and having filed simultaneously herewith Findings of Fact and Conclusions of Law;

IT IS HEREBY ORDERED that the motion for preliminary injunction be and hereby is denied.

IT IS FURTHER ORDERED that the motion for summary judgment be and hereby is granted.

IT IS FURTHER ORDERED that the defendants' motion to strike affidavits be and hereby is denied and the Court further states that all affidavits filed were considered by the Court in rendering its decision.

This is a final and appealable Order.