**Mark Stephen PIRSCHEL,
et al., Plaintiff,**

v.

**Roy Brad SORRELL, et al., Defendants.**

No. Civ.A. 97–123.

United States District Court,
E.D. Kentucky.

March 13, 1998.

---

William C. Jacobs, Lexington, KY, for Plaintiff.

William H. Fogle, Fogle & Maze, P.S.C., Mt. Sterling, KY, for Defendants.

**OPINION AND ORDER**

FORESTER, District Judge.

This matter is before the Court pursuant to Defendants' motion for summary judgment. Having been fully briefed, this matter is ripe for review.

## I. Factual Background.

In early 1997, Plaintiff Mark Pirschel was a student at Montgomery County High School (MCHS). On Friday, February 28, 1997, Plaintiff and his friends attended a basketball tournament held at Estill County High School (ECHS) in which MCHS was a participating team. After entering the gymnasium, Plaintiff went out to his truck to dispose of beer stored there. While carrying the beer across the ECHS parking lot, he was apprehended by Irvine police officer James Fee. Fee ordered Plaintiff to pour the alcohol out in a dumpster and go back inside the gymnasium.[1]

Fee later informed both ECHS and MCHS officials of the incident. According to Plaintiff, Defendant MCHS Principal Roy Sorrell, who was in attendance, informed him that regardless of whether he actually consumed any alcohol he would be suspended because he was in possession of alcohol on school property. During this encounter, it was determined that Plaintiff had consumed no alcohol that evening. Plaintiff did not deny that he was in possession of the beer during his encounter with Sorrell or when talking about the incident with Assistant Principal White. Sorrell then telephoned Plaintiff's parents and informed them of their son's suspension. Sorrell then contacted the Montgomery County Superintendent to confirm the five-day suspension, which became effective March 3, 1997.

On April 9, 1997, Plaintiff filed this action, alleging a panoply of claims, including those made pursuant to 42 U.S.C. § 1983.[2] Specif-

---

**1.** This was the second time within a month that Plaintiff was suspended for possession of alcohol. During a Beta Club school trip, Plaintiff was found with liquor concealed in a shampoo bottle. The suspension was repealed, however, due to the feeling among Montgomery County school officials that the suspension was unfair. Apparently, other students caught with alcohol on the trip were treated more leniently.

**2.** Defendants are Sorrell in his individual and official capacity as Principal of MCHS; Dr. Richard Hughes in his official capacity as Montgomery County School Superintendent; and Montgomery County School Board members David Burdine, Jennifer Ratliff, Edward Roberts, David Rhodes and Harold W. Witt, in their official capacities.

ically, under § 1983 Plaintiff alleges that the manner in which he was informed of the suspension violated his procedural due process rights and MCHS's disciplinary policy regarding alcohol possession by students was unconstitutionally applied. Plaintiff also asserts various state law claims. Defendants move for summary judgment, asserting that the suspension, as a matter of law, did not violate Plaintiff's constitutional rights.

## II. Discussion.

In his complaint, Plaintiff cites a number of provisions from the Federal and Kentucky constitutions. The gravamen of the complaint, however, is that the manner in which Sorrell carried out the suspension violated Plaintiff's procedural due process rights and that Plaintiff's actions were beyond the scope of KRS 158.150(1)(a), making his suspension improper.

### a. Summary Judgment Standard.

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file and draw reasonable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see Smith v. Hudson*, 600 F.2d 60 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 340 (6th Cir.1993). Conclusive allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the

[nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### b. Is the Basketball Tournament a School–Sponsored Activity?

Plaintiff claims that his possession of beer on ECHS property did not warrant suspension under the terms of KRS 158.150,[3] which provides

(1) All pupils admitted to the common schools shall comply with the lawful regulations for the government of schools: (a) ... the use or possession of alcohol or drugs ... on school property, as well as off school property at school-sponsored activities, constitutes cause for suspension or expulsion from school....

KRS 158.150(1)(a). Plaintiff contends that because the incident did not occur on MCHS property, the suspension exceeded the bounds of Sorrell's authority. In addition, Plaintiff believes that the basketball game is not the type of school-sponsored activity contemplated by the Kentucky General Assembly. Thus, the task at hand is to determine whether a student's attendance at an event in which his school is a participant is a school-sponsored activity within the meaning of KRS 158.150.

KRS 158.150(1)(a) lists two settings in which possession of alcohol is punishable: on school property and off of school property at school-sponsored activities. In light of

---

**3.** MCHS disciplinary policy regarding alcohol possession is in pertinent part identical to KRS

158.150(1)(a) which defines acts constituting cause for suspension.

this distinction, Plaintiff's position that a principal in one county is without the broad authority to suspend for possession at any time on school property in another county is persuasive. Clearly, various acts committed by students raise concern. KRS 158.150 permits certain conduct to either be "pigeon-holed" into one of the two punishable contexts or come outside of the province of school officials. While Sorrell would have certainly been correct in suspending a student for possession of alcohol on MCHS grounds after school, it is doubtful that a principal in Fulton County is able to suspend one of her students for walking through an empty Boyd County schoolyard on a Sunday while in possession of a bottle of beer. Therefore, plaintiff in this case could not properly be suspended for possessing alcohol on school property.

■ The second setting in which possession of alcohol may give rise to suspension requires a different approach. The distinction made in KRS 158.150(1)(a) between "on school property" and "off of school property at a school-sponsored activity" reflects a balance struck between those acts which trigger the duties of school officials acting as *in loco parentis*[4] and conduct where the imposition of discipline is better left to the exclusive province of parents and law enforcement. For example, Sorrell may properly discipline a student found with alcohol during a school club trip. *See Clark County Bd. of Educ. v. Jones,* 625 S.W.2d 586, 587 (Ky.App.1981). The question here, however, is not as clear.

■ Whether an activity is a school-sponsored activity is a question of law. *Poling v. Murphy,* 872 F.2d 757, 762 (6th Cir.1989). School sponsorship may be found where school officials schedule, set eligibility requirements for, and fund an activity. *Id.* Here, the assumption that MCHS officials play a role in setting eligibility requirements for its athletes and approving funding for their equipment as well as scheduling games weighs in favor of the tournament being a school-sponsored activity. Whether the activity is a school-sponsored activity for the students attending the tournament as spectators requires further consideration.

■ In deciding whether Plaintiff's conduct while attending the tournament at ECHS justified the suspension, the mission of school administrators and the amount of deference given to their decisions must be analyzed. The United States Supreme Court has on a number of occasions addressed these issues. "The process of educating our youth for citizenship in public schools is not confined to books, the curriculum, and the civics class; schools must teach by example the shared values of a civilized social order." *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 683, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986) (suspension for lewd language in speech not violative of due process). "The system of public education that has evolved in this nation relies necessarily upon the discretion and judgment of school administrators and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees." *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Only when official action has no valid educational purpose is judicial intervention required to protect a student's constitutional rights. *See Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 273, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). So long as official conduct is reasonably related to legitimate pedagogical concerns, such conduct does not run afoul of the constitution. *Id.; Poling,* 872 F.2d at 762 (student declared ineligible in school election due to rude content of campaign speech not violative of First Amendment). Thus, while students clearly are not stripped of their constitutional rights at the schoolhouse gate, decisions made by school officials in imposing discipline are afforded considerable deference. *See id.*

With the mission of school officials in mind, it must now be determined if Plaintiff's conduct arose at a school-sponsored activity. In light of a school's function of teaching students the shared values of a civilized social order, sporting events in which one's school is a participant, regardless of where played, are school-sponsored activities. By involvement with their school's teams, whether as a

---

4. *See e.g., Rone By and Through Payne v. Daviess County Bd. of Ed.,* 655 S.W.2d 28, 30 (1983).

player or a fan, students learn the importance of fair play and experience a camaraderie which few events create. Attending games also teaches young people how to conduct themselves in large groups. In addition, spectators, like the players, are able to enjoy the "thrill of victory" as well as endure "the agony of defeat", with each preparing students how to handle successes and disappointments that may come later in life. These and the numerous other benefits conferred upon students who support their school's teams are consistent with the goals of educators.

In addition, educators are entitled to exercise greater control over activities which "the public might reasonably perceive to bear the imprimatur of the school." *Hazelwood*, 484 U.S. at 271. Clearly, when school officials make available various extra-curricular activities, the performance of its students during those activities is a reflection of the school itself. One school's dominance in an activity may become so inextricably tied to the school as a whole that reference to that school without mention of the activity is rare. In the context of sporting events, student attendance at games, whether played at home or away, plays a large role in the success of the team as the so-called "sixth man" often is the difference between winning and losing. Thus, just as a school may take pride in the success of its teams on the field, it may be equally as proud of its students' expression of loyalty for their team, at home and away, in an exuberant yet civilized manner.

While a school may reap the benefits of a successful team and well-behaved fans, it may also be strapped with a negative label in the event its teams display poor sportsmanship. For example, most, if not all, University of Kentucky basketball fans recall Duke University star Christian Laettner stepping on a Kentucky player's chest during a NCAA tournament game. Although that incident took place several years ago, many still consider Duke a dirty team. Teams at the high school level are not immune from this phenomenon. Undoubtedly, if during the game at ECHS, a MCHS player committed a similar transgression, those in attendance would characterize the team as dirty. Thus, if a player acting in this manner is ignored by either the coach or by other school officials, the school in essence sanctions the conduct.

The same may be said with respect to the conduct of the students attending the game. Just as a school may be labeled as having excellent students based on others' perception of their conduct, a negative reputation will result if students' behavior is unbecoming. The conduct at issue here, possession of alcohol, is of even greater concern in light of teen drug and alcohol use as well as the number of lives taken by those driving while intoxicated. Thus, just as an athlete's improper conduct on the field has a negative impact on a school's image, so do students using or possessing alcohol while attending games.

Plaintiff argues that school sponsored events are limited to those where a student requires permission to attend, citing the MCHS definition of school related trips and activities. According to MCHS's policy governing school-related trips, the Principal must approve all regularly scheduled athletic events, athletic events which are part of a tournament, and trips made within a 150 mile radius of the school. [Plaintiff's Memorandum in Response to Defendants' Motion for Summary Judgment at 4]. Thus, the argument goes, since Plaintiff did not need Sorrell's permission to attend the tournament, the activity was not a school-sponsored activity. This argument is unpersuasive. Based on Plaintiff's reasoning, a basketball game in which MCHS is the visiting team is a school-sponsored activity for the players but not their fellow students attending the game. Plaintiff cites no authority, and the Court is aware of none, where "school-sponsored activities" for purposes of KRS 158.150(1)(a) is defined in this bifurcated manner. Further, the quoted MCHS provision indicates that the trip, and not a student's participation, requires Principal approval. This is a reasonable requirement considering that the school normally provides transportation to and from these types of events and the requirement does not diminish a school's sponsorship of an activity even when attendance is voluntary.

 In light of the foregoing, school athletic events held at other schools are

school-sponsored activities for purposes of KRS 158.150(1)(a). This definition is in accord with Defendants' legitimate interest in teaching that which is vital to a civilized social order; not being perceived as placing its imprimatur on various conduct and promoting the safety of its students. Therefore, the suspension of Plaintiff was not beyond Sorrell's authority. Since the suspension of Plaintiff after being found in possession of alcohol is reasonably related to Defendants' interests, MCHS's disciplinary policy was constitutionally applied to Plaintiff.[5]

### c. Procedural Due Process.

■ Plaintiff also claims that the procedures followed by Sorrell in notifying him of and carrying out the suspension violated his Fourteenth Amendment procedural due process rights. In *Goss v. Lopez,* 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) the Supreme Court held that certain minimal due process requirements must be met prior to suspending a student from public school for ten days or less. The Kentucky General Assembly then enacted KRS 158.150(3) which mirrors the requirements of *Goss.* KRS 158.150(3) provides

A pupil shall not be suspended from the common schools until after at least the following due process procedures have been provided:

(a) The pupil has been given oral or written notice of the charge or charges against him which constitute cause for suspension;

(b) The pupil has been given an explanation of the evidence of the charge or charges *if the pupil denies them;* and

(c) The pupil has been given an opportunity to present his own version of the facts relating to the charge or charges.

KRS 158.150(3) (emphasis added). It is undisputed that Sorrell orally communicated to Plaintiff the grounds for suspension as required by subsection (a) of the statute. In addition, following his meeting with Sorrell, Plaintiff reiterated the events of that evening to Assistant Principal White. During neither his discussions with Sorrell nor White, however, did Plaintiff deny the charges. Thus, subsections (b) and (c) were not implicated. The facts reveal, however, these requirements were also satisfied as Plaintiff was given an explanation of the evidence and the opportunity to explain even though he did not deny the charges. Accordingly, Sorrell, as a matter of law, complied with the due process requirements in carrying out the suspension.

■ Plaintiff argues, however, that he was not afforded due process in two respects. First, because Sorrell indicated he was being suspended for possession of beer on school property rather than at a school-sponsored activity, the notice given did not relate to a cause for suspension. Sorrell's failure to effectuate the suspension with such exactitude did not violate due process. The procedural due process requirements of KRS 158.150(3) are aimed at preventing "unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Goss,* 419 U.S. at 581. In addition, § 1983 is not a vehicle for correction of errors in the exercise of a school official's discretion which do not rise to the level of violations of specific constitutional guarantees. *Strickland,* 420 U.S. at 326. In light of these objectives, a distinction must

---

5. Although Plaintiff's complaint quotes a number of provisions from the Federal and Kentucky Constitutions, in both it and Plaintiff's response to Defendants' motion for summary judgment, Plaintiff fails to articulate how his rights, other than his right to procedural due process, under each cited constitutional provision, were violated. Assuming Plaintiff alleges an equal protection violation under both the Fourteenth Amendment and Section 3 of the Kentucky Constitution, these claims fail as a matter of law. Plaintiff does not allege he is a member of a suspect class. Accordingly, under the equal protection clauses of both constitutions, a rational basis must exist for the differing treatment. *Hooks v. Smith,* 781 S.W.2d 522, 523 (Ky.App.1989). Here, nothing in the record indicates that others in possession of alcohol did not receive a suspension. In addition, in light of the tournament being a school-sponsored activity, the suspension was reasonable. *See Katchak v. Glasgow Independent School System,* 690 F.Supp. 580, 583 (W.D.Ky. 1988). Thus, to the extent Plaintiff alleges an equal protection claim, Defendants' motion for summary judgment is granted. This is also the result to the extent Plaintiff alleges a substantive due process violation as suspension based on possession of alcohol at a school sponsored event is reasonable. *Id.*

be made between the facts underlying the suspension and the precise school policy violated. Thus, while Sorrell may have misstated the basis of the suspension, such did not in any way prevent Plaintiff from disputing or stating his own version of the facts leading to the suspension. In his deposition testimony, there is no indication that Plaintiff disputed the events of that evening as they were told to Sorrell. In addition, prior to being caught, Plaintiff was aware that having beer in his truck violated school rules.[6] Accordingly, Plaintiff's argument is not well taken.

Next, Plaintiff contends that he was denied due process because Sorrell did not respond to Plaintiff's father's (Mr. Pirschel's) displeasure with the suspension. According to the record, immediately following Sorrell's meeting with Plaintiff, Sorrell phoned Mr. Pirschel and explained the situation. Mr. Pirschel then spoke with Plaintiff. After that conversation, however, neither Mr. Pirschel nor Plaintiff disputed any of the facts leading to the suspension. Instead, Mr. Pirschel only instructed Sorrell to permit Plaintiff to drive straight home since he had consumed no alcohol. Not until the next morning did Mr. Pirschel contact Sorrell to complain of the suspension, stating that the officer did not see Plaintiff in possession of the beer. Sorrell then contacted Fee who confirmed that he saw Plaintiff with the alcohol.

Assuming, *arguendo*, that a pupil's parent instead of the pupil may deny the charges after the pupil and the parent passed on a prior opportunity to do so, Sorrell, at Mr. Pirschel's behest, confirmed that Fee had in fact witnessed Plaintiff carrying the beer. Therefore, although Plaintiff did not deny the charge or present his side of the story, Sorrell nonetheless confirmed the events of February 28, 1997 and decided not to reverse the suspension. As a result, Plaintiff, as a matter of law, was not denied procedural due process.

### d. Other State Law Claims.[7]

Plaintiff also alleges a violation of Section 2 of the Kentucky [8] Constitutions due to the purported procedural due process violation and misapplication of KRS 158.150(1)(a). In order to prevail on a claim that state action is arbitrary, three factors are considered: (1) whether the agency exceeded its statutory powers; (2) whether the party affected by an agency's decision was afforded procedural due process; and (3) whether the agency action is supported by substantial evidence. *Commonwealth, Transportation Cabinet, Vehicle Regulation Dept. v. Cornell,* 796 S.W.2d 591 (Ky.App. 1990). Whether an agency action is arbitrary is a question of law. *Ashland Board of Education v. Jayne,* 812 S.W.2d 129 (Ky. 1991). Here, since the tournament was a school-sponsored activity, the Defendants acted within their statutory power. In addition, it has already been determined that Plaintiff was afforded procedural due process and it is undisputed there was evidence that Plaintiff possessed the alcohol. As a result, the decision to suspend Plaintiff was not arbitrary.

Accordingly, **IT IS HEREBY ORDERED**

(1) Defendants' motion for summary judgment [DE # 18] is **GRANTED;**

---

**6.** "I told Lucas I was going to get rid of the alcohol I had ... because he heard ... that some people had gotten into trouble for it." [Plaintiff's depo. at 24].

**7.** Since discovery in this matter is complete, the Court finds the interest in avoiding resolution of state law issues is outweighed by the judicial resources saved by resolving these matters now. *See Hankins v. Gap, Inc.,* 84 F.3d 797, 803 (6th Cir.1996). Accordingly, the Court exercises supplemental jurisdiction over Plaintiff's state law claims.

Plaintiff contends that because Defendants focused little attention in their motion for summary judgment on their state law claims, summary judgment is improper. The Court disagrees. In the memorandum in support of their motion, Defendants narrowed the issue in terms of compliance with KRS 158.150(1)(a) and (3) with the state law claims flowing from the alleged noncompliance. With respect to the state law claims, Defendants argue that such claims fail as a matter of law if these requirements were met. Thus, consideration of Defendants motion with respect to the state law claims is proper.

**8.** "Absolute and arbitrary power over the lives, liberty and property of free men exists nowhere in a republic, not even in the largest majority." Ky. Const. § 2.

(2) The pre-trial conference and trial set for March 23, 1998 and April 21, 1998, respectively, are **SET ASIDE;**

(2) Summary judgment in favor of Defendants will be entered contemporaneously with this opinion and order.